**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By:    John C. Atkin, Esq.
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ  08648 2311
Tel: (609) 896 3600 / Fax: (609) 896-1469
jatkin@foxrothschild.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>JOHN DOE subscriber assigned IP address 173.54.35.53,<br><br>　　　　　Defendant. | Civil Case No. 3:18-cv-12609-MAS-LHG<br><br>**MOTION RETURN DATE:<br>DECEMBER 3, 2018**<br><br>*Document Filed Electronically* |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 173.54.35.53'S MOTION TO QUASH SUBPOENA**

---

**FOX ROTHSCHILD, LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ  08648 2311
Tel: (609) 896 3600
Fax: (609) 896-1469
*Attorneys for Plaintiff,*
*Strike 3 Holdings, LLC*

Of Counsel and on the brief:
John C. Atkin, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND ............................ 3

LEGAL ARGUMENT ........................................................................ 4

    I.     STANDARD OF REVIEW ................................................. 4

    II.    DEFENDANT HAS FAILED TO SATISFY ITS HEAVY
          BURDEN TO QUASH THE SUBPOENA ......................... 5

    III.   THE COURT SHOULD REJECT DEFENDANT'S
          COLLATERAL ATTACKS ON THE SUBPOENA .......................... 7

          A.    Plaintiff's Reliance on Maxmind's Geolocation Technology
                  to Establish This Court's *In Personam* Jurisdiction Over
                  Defendant Was Entirely Appropriate. ...................................... 8

          B.    Defendant's Attacks on Plaintiff's BitTorrent Investigator
                  Are Fundamentally Flawed. ...................................... 11

    IV.   PLAINTIFF'S SUBPOENA SEEKS RELEVANT
          INFORMATION ...................................................... 14

    V.    DEFENDANT'S GENERAL DISCONTENTMENT WITH
          PLAINTIFF'S COPYRIGHT ENFORCEMENT POLICIES ARE
          ERRONEOUS AND/OR INCONSEQUENTIAL ......................... 20

    VI.   PLAINTIFF WILL NOT OPPOSE THIS COURT ENTERING A
          PROTECTIVE ORDER ALLOWING DEFENDANT TO
          REMAIN PSEUDONYMOUS ......................................... 24

CONCLUSION ................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Apple Computer, Inc. v. Franklin Computer Corp.*,
714 F.2d 1240 (3d Cir. 1983), *cert. dismissed*, 464 U.S. 1033
(1984) ........................................................................................................15

*Cobbler Nevada v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) ..............................................................17, 18, 19

*Criminal Prods., Inc. v. Doe*,
No. 16-2589, 2016 WL 6822186 (S.D. Cal. Nov. 18, 2016) .............................8

*Crocs, Inc. v. Effervescent, Inc.*,
No. 06-605, 2017 WL 3888455 (D. Colo. Jan. 30, 2017) ...................................5

*Glacier Films (USA), Inc. v. Turchin*,
896 F.3d 1033 (9th Cir. 2018) ......................................................................18, 19

*In re Ex Parte Glob. Energy Horizons Corp.*,
647 F. App'x 83 (3d Cir. 2016) ........................................................................15

*Hickman v. Taylor*,
329 U.S. 495 (1947).........................................................................................14

*Khumba Film (PTY.), Ltd. v. Does 1-14*,
No. 14-02075, 2014 WL 4494764 (D. Colo. Sept. 12, 2014) ...........................21

*In re Lazaridis*,
No. 10-29, 2011 WL 3859919 (D.N.J. Sept. 1, 2011).........................................6

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
998 F.2d 157 (3d Cir. 1993) ............................................................................25

*Malibu Media, LLC v. Doe*,
No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ..................................13

*Malibu Media, LLC v. Doe*,
No. 13-437, 2013 WL 12121251 (S.D. Cal. Sept. 13, 2013) ............................12

*Malibu Media, LLC v. Doe*,
No. 14-1280, 2014 WL 12616840 (E.D. Pa. May 19, 2014) ..............................9

*Malibu Media, LLC v. Doe*,
No. 15-3147, 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) ..............................6

*Malibu Media, LLC v. Doe*,
No. 15-3504, 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016) ............................11

*Malibu Media, LLC v. Doe*,
No. 15-4743, 2015 WL 5013874 (S.D.N.Y. Aug. 18, 2015) ............................21

*Malibu Media, LLC v. Doe*,
No. 15-8252, 2016 WL 3876425 (D.N.J. July 14, 2016) ...............................5, 20

*Malibu Media, LLC v. Doe*,
No. 18-6574, 2018 WL 5985284 (S.D.N.Y. Nov. 14, 2018) ......................6, 8, 9

*Malibu Media, LLC v. John Does 1-18*,
No. 12-07789, 2014 WL 229295 (D.N.J. Jan. 21, 2014) .....................4, 5, 6, 24

*Malibu Media, LLC v. John Does No. 1-30*,
No. 12-3896, 2012 WL 6203697 (D.N.J. Dec. 12, 2012) ...................................5

*Metro-Goldwyn-Mayer Studies Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .........................................................................................20

*Nu Image, Inc. v. Does 1-23,322*,
799 F. Supp. 2d 34 (D.D.C. 2011) .....................................................................9

*Patrick Collins, Inc. v. John Does 1-13*,
No. 12-7620, 2013 WL 3466833 (D.N.J. July 10, 2013) ...............................4, 6

*Patrick Collins, Inc. v. John Does 1-9*,
No. 12-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) .............................14

*Plastic the Movie Ltd. v. Doe*,
No. 15-2446, 2015 WL 4715528 (D.N.J. Aug. 7, 2015) ...................................16

*Rotten Records, Inc. v. Doe*,
No. 15-1267, 2015 WL 6002794 (W.D. Pa. Oct. 14, 2015) ...............................9

*United States ex rel. Rubar v. Hayner Hoyt Corp.*,
No. 14-830, 2018 WL 4473358 (N.D.N.Y. Sept. 18, 2018) .............................14

*SBO Pictures, Inc. v. Does 1-20*,
No. 12-3925, 2012 WL 2304253 (S.D.N.Y. June 18, 2012)................................8

*Simons v. Arcan, Inc*.,
No. 12-01493, 2013 WL 1285489 (E.D. Pa. Mar. 28, 2013) ...........................10

*Sony Music Entm't v. Does 1-40*,
326 F. Supp. 2d 556 (S.D.N.Y. 2004) .................................................5

*Spanski Enterprises, Inc. v. Telewizja Polska S.A.*,
222 F. Supp. 3d 95 (D.D.C. 2016), *as amended* (Dec. 12, 2016),
aff'd, 883 F.3d 904 (D.C. Cir. 2018)...................................................8

*Strike 3 Holdings, LLC v. Doe*,
No. 17-1680, 2017 WL 5001474 (D. Conn. Nov. 1, 2017)...........................5, 7

*Strike 3 Holdings, LLC v. Doe*,
No. 17-9659, 2018 WL 2371730 (S.D.N.Y. May 23, 2018)............................6

*Strike 3 Holdings, LLC v. John Doe*,
No. 18-1856 (D. Nev. October 17, 2018) ............................................19

*Thompsons Film, LLC v. Velez*,
No. 13-671, 2014 WL 3721288 (M.D. Fla. July 28, 2014)...............................12

*United States v. Richardson*,
No. 11-3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) ........................................8

*United States v. Tillotson*,
No. 08-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) ...................................8

*W. Coast Prods., Inc. v. Does 1-351*,
No. 12-504, 2012 WL 2577551 (S.D. Tex. July 3, 2012) ...................................23

*Williams v. BASF Catalysts, LLC*,
No. 11-1754, 2017 WL 3317295 (D.N.J. Aug. 3, 2017)....................................15

## Statutes

17 U.S.C. 504(c)(1), (2) ...........................................................16

47 U.S.C. § 551 *et seq*................................................................9

## Other Authorities

Federal Rule of Civil Procedure 1 ............................................................................10

Federal Rule of Civil Procedure 4 ............................................................................22

Federal Rule of Civil Procedure 26 ......................................................................9, 14

Federal Rule of Civil Procedure 45 ..........................................................1, 4, 6, 5, 7

Local Civ. R. 5.3 ......................................................................................................25

## PRELIMINARY STATEMENT

Plaintiff, Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"), by and through its attorneys, Fox Rothschild, LLP, respectfully submits this Memorandum of Law in Opposition to Defendant John Doe Subscriber Assigned IP Address 173.54.35.53's ("Defendant") Motion to Quash Subpoena ("Motion").

The only "valid" objection to the subpoena – the only grounds actually found in Federal Rule of Civil Procedure 45 – that Defendants raises is that it imposes an undue burden on him or her.  However, Defendant has no standing to assert this argument.  The burden of the subpoena (due or undue) is placed on the ISP, not Defendant.

Outside the confines of Federal Rule of Civil Procedure 45, Defendant's Motion primarily consists of collateral attacks on this Court's previous decision, finding that Plaintiff had adequately shown good cause to serve limited discovery prior to holding a discovery conference.  However, not only are Defendant's arguments insufficient to justify reconsidering that decision, but they demonstrate a fundamental misunderstanding of this litigation.

Defendant fails to appreciate that Plaintiff did not use Maxmind to show with 100% exactitude that Defendant is the infringer, but rather to show that the user of the IP Address that was downloading and distributing Plaintiff's works resides in the State of New Jersey and, therefore, that this Court has *in personam* jurisdiction to

enter orders for early discovery (such as the subpoena) and, if later investigation showed Defendant was the infringer identified, to hear the case. Similarly, Defendant's attacks on the validity of evidence gathered by infringement detection software to date – attacks which are based on gross misunderstandings of the technology involved – fail to show a flaw with the methodology used, and miss that that evidence need only satisfy Plaintiff's burden of showing a *prima facie* case of infringement against the owner of this IP address, in order to permit Plaintiff to obtain information through the subpoena to complete its investigation.

The Court previously entered an Order finding good cause existed to allow Plaintiff to serve a subpoena to learn Defendant's name and address, in order to allow Plaintiff to complete its investigation of the infringement at issue in this matter and, if Defendant proves to be the infringer, to amend its pleadings and effectuate service of process. It is, of course, possible Defendant is not the infringer, in which case Plaintiff will dismiss it claims, at least with respect to Defendant, while it seeks the true infringer. What is more likely is that Defendant has engaged in this motion practice because he or she knows they are guilty of the infringement alleged, and that allowing the ISP to respond to the valid and enforceable subpoena will only result in Plaintiff connecting the infringement to them, and this litigation proceeding.

In short, Defendant's arguments seeking to quash the subpoena are not only incorrect, but miss the mark entirely. At a minimum, a plaintiff in a BitTorrent

infringement case is entitled to have the ISP produce precisely the information that Defendant here seeks through this Motion to prevent from being produced. Accordingly, for the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendant's Motion to Quash.

## **RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

Strike 3 owns the intellectual property of the award-winning adult entertainment studios *Blacked, Blacked Raw, Tushy*, and *Vixen*. See Declaration of Greg Lansky [ECF No. 4-2, ¶ 3, 19]. Strike 3's philosophy is to hold itself above the rest: higher budgets, higher compensation for its actors and actresses, and higher end productions. *Id.* at ¶ 7–8, 11–13, 15. Despite its success, Strike 3 does not rest on its back-catalogue and is continually seeking out new opportunities and ventures to provide subscribers with a better experience. *Id.* at ¶ 15. Strike 3's business has "raised the bar" for the rest of the industry, "leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist." *Id.* at ¶ 21.

As a result of its higher production and talent costs, Strike 3 is sensitive to the loss of revenue that mass copyright infringement threatens. *Id.* at ¶ 24. Despite attempting to mitigate the infringement outside the courts, *see id.* at ¶ 26 (sending thousands of DMCA takedowns to infringing websites), lawsuits like this have become an option of last resort. *Id.* at ¶ 27. Plaintiff understands the delicate nature

of these suits, and has put in place protocols, including inviting this Court to implement a protective order.  *See* [ECF No. 4-1, at 13].

Defendant is accused of downloading, distributing, and hence infringing numerous different works of Plaintiff across the BitTorrent network.  *See generally* [ECF Nos. 1 and 1.1] (listing the works-in-suit).  Plaintiff moved to serve an early subpoena on Defendant's ISP for the limited purpose of identifying and serving Defendant (while maintaining Defendant's anonymity) in accordance with the Federal Rules of Civil Procedure.  [ECF No. 4].  The Court granted Plaintiff's motion on September 12, 2018, [ECF No. 5], and after Plaintiff served its subpoena on Defendant's ISP, Defendant filed the instant motion to quash this subpoena on November 9, 2018.  [ECF No. 6].

## **LEGAL ARGUMENT**

### I.   **STANDARD OF REVIEW**

Defendant bears "a heavy burden" to prevail on his or her Motion to Quash. *Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295, at *6 (D.N.J. Jan. 21, 2014).  "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of [Fed. R. Civ. P. 45] are satisfied." *Patrick Collins, Inc. v. John Does 1-13*, No. 12-7620, 2013 WL 3466833, at *2 (D.N.J. July 10, 2013) (citations omitted).  "In relevant part, Rule 45 provides that on timely motion, the issuing court must quash a subpoena that: '(iii) requires disclosure of

privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to an undue burden.'"  *Malibu Media, LLC*, 2014 WL 229295 at *6 (quoting Fed. R. Civ. P. 45(c)(3)(A)(iii)–(iv)).  "Absent a finding by a court that a valid basis exists to quash a subpoena, the party receiving the subpoena must comply with it."  *Crocs, Inc. v. Effervescent, Inc.,* No. 06-605, 2017 WL 3888455, at *2 (D. Colo. Jan. 30, 2017) (collecting cases) (emphasis original).

## II.  DEFENDANT HAS FAILED TO SATISFY ITS HEAVY BURDEN TO QUASH THE SUBPOENA

It is clear that no recognized privilege protects the information the subpoena requests from the ISP, and Defendant asserts none.  Nor do Defendant's name and address qualify as "other protected matter," because "[c]ourts have consistently ruled that 'Internet subscribers do not have a reasonable expectation of privacy in their subscriber information.'"  *Malibu Media, LLC*, 2014 WL 229295, at *7 (citing *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, at 566-67 (S.D.N.Y. 2004); *see also Strike 3 Holdings, LLC v. Doe*, No. 17-1680, 2017 WL 5001474, at *5 (D. Conn. Nov. 1, 2017) (citation omitted) ("[T]here is no expectation of privacy in 'subscriber information provided to an internet provider,' such as an IP address."); *Malibu Media, LLC v. Doe*, No. 15-8252, 2016 WL 3876425, at *3 (D.N.J. July 14, 2016); *Malibu Media, LLC v. John Does No. 1-30*, No. 12-3896, 2012 WL 6203697, at *4 (D.N.J. Dec. 12, 2012).

Instead, Defendant's only direct attack on the subpoena – the only grounds in Federal Rule of Civil Procedure 45 asserted by Defendant – is a specious claim that it imposes an undue burden on him or her, which is tucked away at the very end of the moving brief.  [ECF No. 11-1, at 12-13].  The reason why this argument is buried, despite being the only "valid" ground to quash the subpoena in Defendant's moving papers, is simple:  Defendant has no standing to assert it.  The subpoena, directed to the ISP, imposes no burden on Defendant whatsoever.  *See Strike 3 Holdings, LLC v. Doe*, No. 17-9659, 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018) ("'Because the subpoena does not obligate Defendant to do or produce anything,' Defendant cannot object to the subpoena on the grounds that it would constitute an undue burden.") (quoting *Malibu Media, LLC v. Doe*, No. 15-3147, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016)).

"An undue burden exists when 'the subpoena is 'unreasonable or oppressive.'"  *Patrick Collins, Inc*., 2013 WL 3466833, at *3 (quoting *In re Lazaridis*, No. 10-29, 2011 WL 3859919, at *2 (D.N.J. Sept. 1, 2011)).  "A party does not generally have standing to challenge [a] third party subpoena based on undue burden because the subpoena is directed at the ISP and not the Defendant."  Id. (citations omitted).  In this case, "because the subpoena is directed to a third party, . . . [Defendant] cannot establish that it imposes an undue burden upon him."  *Malibu Media, LLC*, 2014 WL 229295, at *7; *see also Malibu Media, LLC v. Doe*,

6

No. 18-6574, 2018 WL 5985284, at *3 (S.D.N.Y. Nov. 14, 2018) ("Because the subpoena at issue is directed at the ISP, Verizon, rather than to Doe, Doe lacks standing to object to the subpoena on the basis of undue burden.").

In short, any burden imposed by the subpoena is placed on the ISP, not Defendant, and as such, this Court should reject Defendant's attempt to quash the subpoena.

## III.   THE COURT SHOULD REJECT DEFENDANT'S COLLATERAL ATTACKS ON THE SUBPOENA

Rather than rely on recognized grounds to quash a subpoena, as set forth in Federal Rule of Civil Procedure 45, Defendant's motion primarily consists of collateral attacks on Plaintiff's earlier motion [ECF No. 7], attempting to undercut Plaintiff's showing of "good cause" for seeking leave to serve early discovery. These arguments should be rejected, since the Court has already ruled on this issue. *See 3 Holdings, LLC v. Doe*, No. 17-1680, 2017 WL 5001474, at *7 n.10 (D. Conn. Nov. 1, 2017) (reminding defendants that "[i]n considering whether to make a motion to quash . . . the Court has already analyzed the requisite principal factors to determine that such a subpoena should be allowed").  Nevertheless, even if the Court considers these arguments, each one is meritless, as explained in detail below.

**A.      Plaintiff's Reliance on Maxmind's Geolocation Technology to Establish This Court's *In Personam* Jurisdiction Over Defendant Was Entirely Appropriate.**

While not a ground to quash the subpoena, Defendant's "Background" section attempts to cast doubts on the reliability of Plaintiff's geolocation trace of Defendant's IP address to New Jersey using Maxmind geolocation technology. [ECF No. 11-1, at 6].  Defendant's criticism is based on a misunderstanding of how Maxmind's geolocation technology works, as well as the purpose Maxmind's technology serves in Plaintiff's Complaint.[1]

"BitTorrent software is wholly anonymous save for the disclosure of the user's IP address."  *Malibu Media, LLC*, 2018 WL 5985284, at *2 (citation omitted).

---

[1] Federal courts around the country have found that tracing an IP address through MaxMind's geolocation database, like here, establishes a prima facie case of personal jurisdiction and venue.  *See, e.g.*, *Spanski Enterprises, Inc. v. Telewizja Polska S.A.*, 222 F. Supp. 3d 95, 106 (D.D.C. 2016), *as amended* (Dec. 12, 2016), aff'd, 883 F.3d 904 (D.C. Cir. 2018); *Criminal Prods., Inc. v. Doe*, No. 16-2589, 2016 WL 6822186, at *3 (S.D. Cal. Nov. 18, 2016); *SBO Pictures, Inc. v. Does 1-20*, No. 12-3925, 2012 WL 2304253, at *1 n.10 (S.D.N.Y. June 18, 2012).  Indeed, federal law enforcement agencies routinely rely on MaxMind for their cyber investigations.  *See e.g.*, *United States v. Richardson*, No. 11-3116, 2012 WL 10382, at *2 (D. Neb. Jan. 3, 2012) (Federal Bureau of Investigation), *report and recommendation adopted*, No. 11-3116, 2012 WL 395509 (D. Neb. Feb. 7, 2012); *United States v. Tillotson*, No. 08-33, 2008 WL 5140773, at *6 (E.D. Tenn. Dec. 2, 2008) (Department of Justice).  A 2011 report by the Center for Applied Internet Data Analysis that compared the accuracy of various geolocation services found that MaxMind was the most reliable.  See Bradley Huffaker & Marina Fomenkov et al, Geocompare: a comparison of public and commercial geolocation databases (May 16, 2011) available at http://www.caida.org/publications/papers/2011/geocompare-tr/geocompare-tr.pdf.

"As a result, subpoenaing [an ISP], which can use its subscriber logs to connect the identity of one subscriber and a particular IP address, is the only means to obtain identifying information of Doe." *Id.* Thus, armed with just an undesignated string of numbers – the IP address – Plaintiff must seek out the appropriate court with proper *in personam* jurisdiction over Defendant to issue such an order. *See* Fed. R. Civ. P. 26(d); 47 U.S.C. § 551 *et seq.*

"[G]eolocation services that are generally available to the public . . . [are used] to derive the approximate location of the IP addresses identified for each putative defendant." *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011).

> [W]hile these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location . . . [and therefore provide] a good faith basis to believe a putative defendant may be an [New Jersey] resident if a geolocation service places his/her IP address within [New Jersey], or within a city located within 30 miles of [New Jersey].

*Id.* Consequently, Plaintiff used Maxmind to geolocate Defendant's IP address to within the bounds of the District of New Jersey, thereby establishing a "prima facie showing of personal jurisdiction by alleging its geolocation software places the defendant within this district." *Malibu Media, LLC v. Doe*, No. 14-1280, 2014 WL 12616840, at *2 (E.D. Pa. May 19, 2014); *see also Rotten Records, Inc. v. Doe*, No. 15-1267, 2015 WL 6002794, at *1 (W.D. Pa. Oct. 14, 2015) (finding that the allegation that plaintiff "used proven IP address geolocation technology ensuring

that the IP address traced to a physical address located within this District" which in turn established the court's "personal jurisdiction and venue").

Contrary to what Defendant suggests, Plaintiff did not use Maxmind to perfectly triangulate Defendant's address. *See* [ECF No. 11-1, at 6]. Indeed, one of the two pieces of information Plaintiff's subpoena requests from the ISP is Defendant's precise address. Maxmind's technology simply establishes *prima facie* evidence that the subscriber to the offending IP address resides within this District's jurisdiction. While information regarding Defendant's whereabouts are well within his or her control, and, thus, it is within Defendant's power to compellingly rebut Plaintiff's *prima facie* evidence, Defendant's vague insinuations about Maxmind's accuracy are plainly inadequate. *See Simons v. Arcan, Inc.*, No. 12-01493, 2013 WL 1285489, at *6 (E.D. Pa. Mar. 28, 2013) (requiring defendant to provide an affidavit or some sort of evidence to rebut the plaintiff's personal jurisdiction assertions). It is telling that despite Defendant's suggestion that the geolocation trace may not be accurate, Defendant does not deny residing within this Court's jurisdiction.[2] In short, Defendant's misplaced and unsupported attacks on Plaintiff's reliance on

---

[2] Perhaps even more telling, in Plaintiff's Exhibit A appending Verizon's notice of the subpoena to Defendant, [ECF No. 11-2, at 5], Defendant conspicuously redacts the portion of the notice displaying his address. While Defendant did not have to reveal his or her full address, by simply revealing the domicile state, Defendant could have settled the issue of *in personam* jurisdiction immediately instead of drawing out litigation, contrary to Federal Rule of Civil Procedure 1.

MaxMind geolocation technology to establish a *prima facie* case of *in personam* jurisdiction clearly fail to provide a basis to quash the subpoena.

## B. Defendant's Attacks on Plaintiff's BitTorrent Investigator Are Fundamentally Flawed.

Defendant also attempts to attack this Court's prior decision by unsuccessfully calling into question Plaintiff's reliance on the findings of IPP International U.G. ("IPP"), Plaintiff's BitTorrent investigator.[3]   [ECF No. 11-1, at 7].   Specifically, Defendant scrutinizes the UTC[4] column of Exhibit A of Plaintiff's Complaint, which lists the times IPP recorded a download transaction of Plaintiff's motions pictures between Defendant's IP address and the BitTorrent swarm.   Defendant argues that the UTC time of two of the downloads are within ten minutes of each other, which Defendant baselessly suggests is "unlikely."   The Court should disregard these arguments, as they are premised on a clear misunderstanding of what Exhibit A of the Complaint shows, how BitTorrent itself works, and a misguided hope that the Court does not understand statistics.

---

[3] Defendant contends that IPP's BitTorrent detection software has never been cross-examined before.   However, a similar infringement technology application was examined by the Eastern District of New York, which found the methods of detection sound.   *See generally Malibu Media, LLC v. Doe*, No. 15-3504, 2016 WL 4444799, at *3-5 (E.D.N.Y. Aug. 23, 2016) (denying motion for reconsideration of order granting leave for early discovery, denying motion to quash subpoena).

[4] Coordinated Universal Time (abbreviated to UTC) is the primary standard by clocks and time are regulated world-wide.

First, the UTC column of Exhibit A does not denote when a file's download was completed. It merely represents the time IPP recorded a specific transaction between the offending IP address and the BitTorrent swarm containing Plaintiff's motion picture. As such, there are potentially thousands of UTC values that could be included in Exhibit A for any given download – for convenience, Plaintiff selected only one UTC value to display for each work in Exhibit A as only one was necessary for the court filing. As a result, Defendant's contention that Plaintiff's evidence is insufficient and provides only a "snapshot" of the infringement does not negate Plaintiff's good cause in applying for the subpoena. *See e.g., Malibu Media, LLC v. Doe*, No. 13-437, 2013 WL 12121251, at *1 (S.D. Cal. Sept. 13, 2013) (denying motion to quash and rejecting argument that infringement claims rest on "snapshot theory of liability").

Second, BitTorrent does not operate linearly; it is a dynamic model that permits multiple downloads of multiple files from multiple "peers" simultaneously. *See e.g., Thompsons Film, LLC v. Velez*, No. 13-671, 2014 WL 3721288, at *2 (M.D. Fla. July 28, 2014) ("This interactive, simultaneous data-sharing connection, referred to as a 'swarm', leads to a rapid spreading of a file through peer users [and is used] to initiate simultaneous connections with hundreds of other users possessing and sharing copies of digital media . . . ."). This decentralization is what makes BitTorrent so robust and appealing to infringers. It is designed to allow multiple

12

downloads (and uploads) at once, so the proximity of downloads, let alone those times recorded in Exhibit A's UTC column, are inconsequential. In short, it is entirely plausible for a party to download a single motion picture over the BitTorrent network in ten minutes.

Finally, Defendant asserts that a *different litigant* has acknowledged that roughly 30% of subscribers identified in *other* BitTorrent cases did not end up being the infringer. [ECF No. 11-1, at 8]. The parties can only agree to disagree concerning the accuracy of this statement (or its relevance here), as Defendant offers no proof of this statement but conjecture and speculation by others, and it is not Plaintiff's burden to refute it – that which can be asserted without evidence can be dismissed without evidence. Nevertheless, even "assuming that this number is typical, it also suggests a 70% chance that the subscriber and the infringer are one and the same – a percentage that suggests that *it is, at the very least, plausible that an IP address identifies the correct defendant." Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, at *5 (D. Md. Dec. 16, 2014) (emphasis added). "Other courts have agreed that, notwithstanding other concerns, for the purposes of Rule 8, a plaintiff may conclude that the subscriber associated with an IP address is the likely infringer of a copyright." *Id*. In fact, Plaintiff has demonstrated in this case that Defendant's IP address infringed multiple works over a long period of time. *See*

[ECF No. 1-1].  This makes it more likely that Defendant, or someone in his or her household, is the infringer.

## IV.   PLAINTIFF'S SUBPOENA SEEKS RELEVANT INFORMATION

The Federal Rules of Civil Procedure provide for a liberal discovery process. Indeed, the Supreme Court has long-held: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Patrick Collins, Inc. v. John Does 1-9*, No. 12-3161, 2012 WL 4321718, at *4 (C.D. Ill. Sept. 18, 2012) (finding that plaintiff seeking a similar subpoena "is not engaged in a fishing expedition" and that the subpoena is "proper").  Yet this is precisely what Defendant does.  *See* [ECF No. 11-1, at 10 (referring to Plaintiff's subpoena as a "hunting expedition")].  This is insufficient.  Instead, "a party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded to the federal discovery rules, [a subpoena] is not relevant or how each [request] is overly broad, burdensome or oppressive."  *United States ex rel. Rubar v. Hayner Hoyt Corp.*, No. 14-830, 2018 WL 4473358, at *2 (N.D.N.Y. Sept. 18, 2018) (citations and internal quotations omitted).  This Defendant fails to do.

Defendant makes much of the 2015 amendment to Federal Rule of Civil Procedure 26(b), *see* [ECF 11-1 at 5-6], which "reads out [the words] 'reasonably

calculated to lead to the discovery of admissible evidence' in favor of discovery that is 'proportional to the needs of the case.'" *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 86 n.9 (3d Cir. 2016).  However, other than offering this history lesson in recent amendments to the Federal Rules, Defendant offers no explanation why this rule change renders the information sought by the subpoena outside the scope of discovery.  That is because it does not.

"The present amendment moves the proportionality factors to the forefront of Rule 26, but does not change any of the analysis applied to the scope of discovery issues[.]" *Williams v. BASF Catalysts, LLC*, No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

> When addressing the scope of discovery under the revised Rule 26(b)(1), the Court must consider a number of factors:  (1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* (citing Fed. R. Civ. P. 26(b)(1).  All of these factors are ignored by Defendant, of course, because they all weigh in favor of permitting this discovery.

The importance of the issues at stake in this litigation cannot be understated, not only because Plaintiff is being financially hurt by Defendant's piracy, but because enforcement of copyright laws is in the public interest, as well.  *See Apple*

*Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."), *cert. dismissed*, 464 U.S. 1033 (1984).  The amount in controversy is high, as Plaintiff's statutory damages could be in excess of $1 million, and could increase to $5.4 million in the event the Court finds Defendant's infringement to be willful.  17 U.S.C. 504(c)(1), (2).  Defendant (and his or her ISP and counsel) alone have access to Defendant's name and address.  Defendant apparently has sufficient resources to retain counsel and file motions to quash.  And the burden or expense of this discovery is slight – indeed, Defendant need not have incurred any burden since this discovery was not directed toward them.

Finally, taken out of order, the fifth consideration, the importance of the discovery in resolving the issues, is clearly the most important factor here.  It is, of course, possible that Defendant may not be the infringer of Plaintiff's copyrights, but it makes no sense to allow Defendant to rely on that mere possibility alone to quash the subpoena.  "The purpose of expedited discovery is to weed out who the infringer is and to identify the alleged culprit."  *Plastic the Movie Ltd. v. Doe*, No. 15-2446, 2015 WL 4715528, at *3 (D.N.J. Aug. 7, 2015).

16

As the Ninth Circuit recently recognized in *Cobbler Nevada v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) (a case Defendant relies upon in the mistaken belief it supports their motion to quash, despite doing the exact opposite), early discovery, such as what Plaintiff was seeking (and was granted) here, is "part of the puzzle" in determining the identity of the infringer and, thus, that such early discovery is wholly appropriate. *Id*. at 1145. And there is no more important information in resolving the issues of this litigation at this stage than Defendant's name and address – these items of information are crucial to allow Plaintiff to complete its investigation to determine whether the evidence it has connects Defendant to the infringement that has occurred and, if so, to amend the complaint and serve him or her with service of process.

In *Cobbler Nevada*, the Ninth Circuit held that a plaintiff in a BitTorrent copyright infringement action was required to pay attorneys' fees to a prevailing defendant because the plaintiff did not act objectively reasonable when it continued to pursue an amended complaint against a defendant where "[t]he only connection between [the defendant] and the infringement was that he was the registered internet subscriber and that he was sent infringement notices." 901 F.3d at 1147. Importantly, the Ninth Circuit noted in its ruling that the plaintiff there had actually "acknowledged that its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'" *See id*. Thus, the Ninth Circuit

17

reached this conclusion *after* the district court permitted the plaintiff to subpoena the ISP for the defendant's identifying information, conduct an initial investigation into the defendant, and even depose the defendant.  *See id*.  Just a few weeks prior to releasing the Cobbler decision, the Ninth Circuit ruled in a similar case that "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" along with permitting a plaintiff to depose the defendant early in the litigation was   "practical" and "sensible[.]"  *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1036, 1038 (9th Cir. 2018).

In *Cobbler*, the district court allowed the subpoena to be issued to the ISP, the ISP to respond, and the subscriber to be identified.  It was only *after* the subscriber was identified, and it became clear – in that case – that neither that information nor any other information linked the defendant to the infringement, that the court found it was improper for the plaintiff to continue to pursue claims against that subscriber. That is the reason the Ninth Circuit in *Cobbler* used the words "standing alone" – confirming that a plaintiff in a BitTorrent infringement case such as this case gets to *at least* identify the subscriber and then conduct an investigation of that specific subscriber.  If that identity "standing alone" does not support the assertion that the subscriber is the infringer – if follow-up investigation does not bear fruit or points elsewhere – then it may not be proper to proceed with a case.  *But the plaintiff gets*

*to start with that information*.  And the only way to get that information is through the subpoena sought to be quashed by this motion.

At this stage of the litigation, when Plaintiff does not know Defendant's identity or address, it is impossible to plead any set of facts that would specifically connect Defendant to the infringement beyond simply being the subscriber.  Without knowing who Defendant is, Plaintiff cannot use its evidence to connect Defendant to the infringement.  This is true of nearly every copyright infringement claim based on infringement through the Internet.  However, nothing in *Cobbler* nor *Glacier* would indicate the Ninth Circuit sought to prevent copyright holders from enforcing Internet piracy all together.  To the contrary, *Glacier* specifically recognizes that a case such as this one is true to the purpose of the Copyright Act:

> Inherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional infringement suit against one who wrongfully copies.' In the Internet Age, such suits 'have served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect.

896 F.3d at 1041 (internal citations omitted).  As the District Court of Nevada recently held, "[i]nterpreting *Cobbler* to require plaintiffs to identify defendants without allowing plaintiffs the tools to do so would not serve the interests of justice." *Strike 3 Holdings, LLC v. John Doe*, No. 18-1856, at *2 (D. Nev. October 17, 2018). Accordingly, not only does *Cobbler* not help Defendant in any way on this Motion, it actually defeats Defendant's Motion.

## V.   DEFENDANT'S GENERAL DISCONTENTMENT WITH PLAINTIFF'S COPYRIGHT ENFORCEMENT POLICIES ARE ERRONEOUS AND/OR INCONSEQUENTIAL

Defendant's unfounded attacks on Plaintiff's litigation generally are also, obviously, not valid grounds to quash the subpoena and, therefore, Plaintiff will not dwell on them at length here.

Defendant's criticism that he or she has not received a DCMA notice from Plaintiff (an issue that discovery requests will explore if Defendant is determined to be the infringer) is, of course, irrelevant.  DMCA notices are a general-purpose tool in a rights-holder's toolbox to try and mitigate online infringement, but they are not a precondition to suit.  *See* S. Rep. No. 105-190, at 45 ("[C]opyright owners are not obligated to give notification of claimed infringement in order to enforce their rights.").  Moreover, "the fact remains that file sharing of copyrighted work is infringement." *Malibu Media, LLC v. Doe*, No. 15-8252, 2016 WL 3876425, at *5 (D.N.J. July 14, 2016) (citing *Metro-Goldwyn-Mayer Studies Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005)).  Responsibility always lies with the individual not to infringe.

Nor should this Court give any credence to Defendant's incorrect claim that Plaintiff has no intention of litigating because, clearly, this opposition alone should demonstrate Plaintiff's intent to protect its copyrights from Defendant's theft.  Nor should this Court accept Defendant's conjecture that all Plaintiff's closed claims in this District have settled without regard for an individual's liability.  Of the cases

20

voluntarily dismissed by Plaintiff, after the ISP returns a subscriber's identity, some are the result of the ISP no longer having the requisite information or of Plaintiff's investigators inability to reasonably determine the identity of the infringer.  This comports with Plaintiff's Rule 11 obligation to only bring claims it believes it can reasonably support.  And as to those cases that do, in fact, settle, "there are any number of reasons free from coercion that a defendant may choose to settle, including culpability."  *Malibu Media, LLC v. Doe*, No. 15-4743, 2015 WL 5013874, at *1 (S.D.N.Y. Aug. 18, 2015).  It is in neither parties' interest, after liability is established, to engage in lengthy and expensive litigation.  Regardless, "Plaintiff has a constitutional right to file a lawsuit to and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works . . . ."  *Khumba Film (PTY.), Ltd. v. Does 1-14*, No. 14-02075, 2014 WL 4494764, at *2 (D. Colo. Sept. 12, 2014) (citation omitted).

Finally, Defendant asserts, without citation to any authority whatsoever, that Plaintiff may simply serve "Subscriber through Subscriber's counsel on a Summons naming 'John Doe subscriber assigned IP address 173.54.325.53' as defendant" and that "Plaintiff can request a summons in the name of John Doe subscriber assigned IP address 173.54.35.53 and serve process on Subscriber through Subscriber's counsel. Plaintiff does not need Subscriber's name and address to pursue its scheme." [ECF No. 11-1 at 1, 8].  Unfortunately, the Federal Rules of Civil Procedure say

21

otherwise and, more importantly, Defendant again fails to appreciate that allowing Defendant to remain anonymous to *Plaintiff* completely undermines the point of the subpoena to the ISP.

First, Federal Rule of Civil Procedure 4(a)(1) provides, in relevant part that "[a] summons must: (A) *name* the court and *the parties*; [and] (B) be directed to *the defendant*; . . . ." (Emphasis added). Defendant can, of course, waive service or agree to accept service through his or her counsel, as their agent, *see* Fed. R. Civ. P. 4(d), (e)(2)(C), but that does not change the fact that Defendant must be *named* in the summons, and it must be directed to him or her. Defendant cites no authority for the proposition that a summons may be issued to an anonymous person.

Second, Defendant's suggestion that anonymous service through counsel is sufficient – even if allowed – shows their fundamental misunderstanding of the issue. Plaintiff needs to learn Defendant's identity not only to eventually accomplish service of process, but more importantly, to complete its investigation to confirm Defendant is, in fact, the infringer of the copyrights identified in the Complaint.

> The identifying information allows Plaintiff to make a good faith investigation into whether a particular individual has a reliable factual connection to the IP address associated with the swarm. If Plaintiff learns that the IP address is not a reliable identifier for a person, who Plaintiff in good faith can show committed an alleged legal wrong, Plaintiff has an obligation under Federal Rule of Civil Procedure 11 to cease pursuit of the claim against that individual.

*W. Coast Prods., Inc. v. Does 1-351*, No. 12-504, 2012 WL 2577551, at *4 (S.D. Tex. July 3, 2012).  Plaintiff cannot complete its investigation if Defendant remains anonymous *to Plaintiff*.

It is not surprising Defendant is fighting this subpoena so hard at this early stage – perhaps it is the bad advice of the cottage industry defense bar that has grown fat on these lawsuits, encouraging early settlements and completely unnecessary motions to quash, rather compliance with Plaintiff's reasonable and un-intrusive investigations, by scaring their clients into believing that Plaintiff is a bogeyman who would pursue innocent and guilty parties alike.  These defense attorneys cry "copyright troll," and warn of hypothetical bad faith tactics that Plaintiff's counsel *has never and would never* engage in, but, of course, must at the same time acknowledge the validity of Strike 3's investigative methods, the reasonableness of its litigation positions – including dismissing cases where investigation proves the identified subscriber is not the infringer, and settling cases for far below minimum statutory amounts where infringers adequately show financial hardship – and its willingness to cooperate in every application for the entry of protective orders to proceed anonymously.  Indeed, Plaintiff has already agreed to join in (and not oppose) Defendant's application for a protective order after the Court denies this motion to quash here.  More likely, Defendant is fighting hard here because he or she knows that once Plaintiff learns his or her name and address, Plaintiff *will* be

23

able to connect the infringement of its copyrights to Defendant.  In short, Defendant is guilty, and they know they are guilty.

The ISP's response to the subpoena, providing Defendant's name and address, is the next step in this litigation.  Once Plaintiff has that information, it will continue its investigation to determine whether there is (still) a good faith basis for proceeding with this litigation against Defendant.  It is, of course, possible Defendant is not the infringer, but Plaintiff cannot be sure of that until after it has investigated the issue with Defendant's name and address in hand.  However, this Court should not accept Defendant's bald assertion to the contrary and quash the subpoena.  *See Malibu Media, LLC v. John Does 1-18*, No. 12-07789 KM, 2014 WL 229295, at *8 (D.N.J. Jan. 21, 2014) ("If any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights.")  (citation and internal quotations omitted).

## VI.   PLAINTIFF WILL NOT OPPOSE THIS COURT ENTERING A PROTECTIVE ORDER ALLOWING DEFENDANT TO REMAIN PSEUDONYMOUS

Plaintiff previously raised the appropriateness of a protective order allowing Defendant to proceed anonymously, and has agreed not to oppose Defendant's motion to do so now.  [ECF No. 4-1, at 17; ECF No. 11-2 at ¶ 6].  In fact, it is Plaintiff's internal policy to do so in *every* case filed.  [ECF No. 4-2, ¶ 33].  Allowing

Defendant to litigate under the "John Doe" pseudonym will completely remove concerns about unwanted associations with Plaintiff's motion pictures and allow the parties to focus on the merits of the copyright claim. The only thing preventing the Court from entering an Order for such relief now is Defendant's decision to delay filing that motion until after the Court has ruled on the motion to quash.[5] *See* [ECF No. 11-1 at 2] ("The parties have agreed to allow Subscriber to proceed anonymously under L. Civ. R. 5.3 if the motion to quash is denied.").

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Strike 3 Holdings, LLC, respectfully requests that the Court should enter an Order denying Defendant John Doe Subscriber Assigned IP Address 173.54.35.53's Motion to Quash Subpoena.

DATED: November 19, 2018          Respectfully submitted,

**FOX ROTHSCHILD LLP**
Attorneys for Plaintiff,
Strike 3 Holdings, LLC

By:   */s/ John C. Atkin, Esq.*
          JOHN C. ATKIN

---

[5] As the Court is aware, given the First Amendment right of the public to access filed materials and judicial proceedings, *see Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993), the parties cannot unilaterally agree to seal the record. Given Defendant's current anonymity to all but his or her counsel and ISP, Plaintiff, of course, cannot submit a certification "on personal knowledge" concerning Defendant's legitimate private interest, or the clearly defined and serious injury that would result from the denial of that application. L. Civ. R. 5.3(c).