Lippincott IP LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 237-0400
flann@lippincottip.com
Attorneys for Defendant John Doe subscriber assigned IP address 173.54.35.53

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Hon. Michael A. Shipp, U.S.D.J. |
| Plaintiff, | Case No. 3:18-cv-12609-MAS-LHG |
| v. | MEMORANDUM OF LAW OF DEFENDANT JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 173.54.35.53 IN SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION TO DOE'S MOTION TO QUASH |
| JOHN DOE subscriber assigned IP address 173.54.35.53, | |
| Defendant | |

FLANN LIPPINCOTT, ESQ.
    On the Brief

LIPPINCOTT IP LLC
475 Wall Street
Princeton, New Jersey 08540
Attorneys for Defendant

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES…………………………………………………………………..iii

PRELIMINARY STATEMENT………………………………………………………………….1

STATEMENT OF FACTS……………………………………………………………………...1

LEGAL ARGUMENT……………………………………………………………………………1

    I     SUBSCRIBER HAS STANDING TO CHALLENGE THE SUBPOENA BECAUSE IT WOULD SUBJECT SUBSCRIBER TO UNDUE BURDEN AND THE SUBPOENA IS NOT LIKELY TO PROVIDE RELEVANT INFORMATION……………………………..1

    II    THE LAW ALLOWS A PLAINTIFF TO ENGAGE IN DISCOVERY WITH A JOHN DOE DEFENDANT UNTIL PLAINTIFF HAS EVIDENCE OF PERSONAL INVOLVEMENT OF THE NAMED DEFENDANT……………………………………………………………………….4

    III   PLAINTIFF CANNOT BE TRUSTED WITH ITS ASSURANCES OF CONFIDENTIALITY BECAUSE IT HAS UNCLEAN HANDS…………5

          A.  Plaintiff Has Unclean Hands……………………………………………5
          B.  Plaintiff Cannot Be Trusted With Its Assurances of Confidentiality…...6

    IV   SUBSCRIBER HAS A RIGHT TO MAKE COLLATERAL ATTACKS ON THE SUBPOENA THAT LEVIES AN UNDUE BURDEN ON SUBSCRIBER……………………………………………………………………6

    V    PLAINTIFF'S SUBPOENA DOES NOT SEEK RELEVANT INFORMATION……………………………………………………………….7

    VI   PLAINTIFF DELIBERATELY AVOIDS USING INEXPENSIVE COPYRIGHT ENFORCEMENT POLICIES SO IT CAN EXTORT SUBSCRIBERS WITH THE THREAT OF HUGE DAMAGES…………..8

CONCLUSION…………………………………………………………………………...9

TABLE OF AUTHORITIES

CASES                                                                                                          Pages

*Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Circ. 2010)……………………………….7

*Browne v. Zaslow*, 103 F. Supp. 3d 666 (E.D. Pa. 2015)…………………………………….5

*Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014)…………………………………………5

*Cordial v. Atlantic City*, No. 1:11-01457, 2014 WL 1095584
 (D.N.J. March 19, 2014)……………………………………………………………….4

*Dawes-Lloyd v. Publish America, LLLP*, 441 Fed. Appx. 956 2011 WL 3555427
 (3d Cir. 2011) (per curiam)…………………………………………………………….5

*Kaplan v. Doe*, No. 14-1099(CCC), 2015 WL 1472641
 (D.N.J. March 31, 2015)……………………………………………………………….4

*Malibu Media, LLC v.* Doe, No. 1:14-20213-UU, 2014 U.S. Dist. LEXIS 185324
 (S.D. Fla. Mar. 4, 2014)………………………………………………………………..3

*Malibu Media, LLC v.* Doe, 2014 WL 229295
 (D.N.J. Jan. 21, 2014)………………………………………………………………….2

*Malibu Media, LLC v. Lee*, No. 12-03900, 2013 WL 2252650 (D.N.J. 2013)……………..6

*Plastic the Movie Ltd. v. Doe*, No. 15-2446, 2015 WL 4715528
 (D.N.J. Aug. 7, 2015)…………………………………………………………………..2

*Raw Films, Ltd. v. Does 1-15*, No. 11-7248, 2012 WL 1019067
 (E.D. Pa. Mar. 26, 2012)……………………………………………………………….2

*Reed v. Straniero*, No. 06-3496, 2006 WL 2331107
 (D.N.J. August 10, 2006)……………………………………………………………....4

*Strike 3 Holdings, LLC v. Doe*, No. 18-1425, 2018 WL 6027046
 (D.D.C. November 16, 2018)……………………………………………………1, 3, 5, 7

*Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18 (D.D.C. 2005)…………………..1

STATUTES

17 U.S.C. § 512 …………………………………………………………………………..8

RULES

Fed. R. Civ. P. 26(c)(1)(A)……………………………………………………………….7

Fed. R. Civ. P. 26(b)(1)………………………………………………………………..7

LAW REVIEWS

Lawrence F. Rozsnyai, *Easy Come, Easy Go: Copyright Infringement and the DMCA's Notice and Takedown Provision in Light of Rossi v. MPAA*, 2 Shidler J. L. Com. & Tech. 15, Spring 2006……………………………………..8

PRELIMINARY STATEMENT

Subscriber John Doe subscriber assigned IP address 173.54.35.53 ("Subscriber"), by and through its attorneys, Lippincott IP LLC, respectfully submits this Memorandum of Law in Reply to Plaintiff Strike 3 Holdings, LLC ("Plaintiff") Opposition to Subscriber's Motion to Quash Subpoena ("Motion").

STATEMENT OF FACTS

The parties executed a settlement confidentiality agreement on October 17, 2018. Lippincott Decl., para. 2. The U.S. Copyright Office provides a chart that explains the pendency of copyright applications. Lippincott Decl., para.3. Verizon has a privacy statement. Lippincott Decl., para. 4. Exhibit A to the Complaint lists 19 copyright applications. ECF No. 1-1.

LEGAL ARGUMENT

I     SUBSCRIBER HAS STANDING TO CHALLENGE THE SUBPOENA BECAUSE IT WOULD SUBJECT SUBSCRIBER TO UNDUE BURDEN AND THE SUBPOENA IS NOT LIKELY TO PROVIDE RELEVANT INFORMATION

Ten days ago a District Court granted a defendant's motion to quash Plaintiff's subpoena on defendant's ISP because it "will not accept the risk of misidentification." *Strike 3 Holdings, LLC v. Doe*, No. 18-1425, 2018 WL 6027046 at \*4 (D.D.C. November 16, 2018). That court found that "Strike 3's need for discovery does not outweigh defendant's privacy expectation," and that even if defendant could proceed under a confidentiality order, this still "drags defendant into court and foists on them the unenviable burden of hiring a lawyer or defending their reputation pro se, all before they've ever been served. That's not how our system of litigation is supposed to work." *Id*. at \*3.

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005). Courts routinely deny that

1

subscribers have such an interest on the grounds that they have shared that information with their Internet Service Provider ("ISP"). *Plastic the Movie Ltd. v. Doe*, No. 15-2446, 2015 WL 4715528 at *1 (D.N.J. Aug. 7, 2015). ("[T]he information sought is not privileged or confidential since it is already voluntarily shared with the ISP."). There are several problems with this premise. First, the terms of use of an ISP – its contract with its subscriber – provide that its name and address are controlled by a privacy agreement and only may be shared with third parties under certain limited circumstances. Lippincott Decl., para. 4. A contractual privacy agreement with a vendor is not equivalent to casually tossing one's name and address into the public domain for the Plaintiff to take on a phishing expedition.

Second, these courts are denying these motions to quash on the assumption that the subscriber is the defendant. *Raw Films, Ltd. v. Does 1-15*, No. 11-7248, 2012 WL 1019067, at *8 (E.D. Pa. Mar. 26, 2012) (The "expectation of internet users engaging in online file-sharing … is at most minimal because those individuals have already voluntarily given up certain information"); *Malibu Media, LLC v.* Doe, 2014 WL 229295 at *8 (D.N.J. Jan. 21, 2014) ("While the Court acknowledges that 'there is some social stigma attached to consuming pornography … it is [nonetheless] the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove'"). However, Plaintiff has admitted that it has no idea if Subscriber is the actual defendant. Plaintiff states in its Opposition Memorandum of Law, ECF No. 12: "if later investigation showed Defendant was the infringer identified," "if Defendant proves to be the infringer," and "while it seeks the true infringer," at 2; "[o]nce Plaintiff has that information, it will continue its investigation to determine whether there is (still) a good faith basis for proceeding with this litigation against Defendant. It is, of course, possible Defendant is not the infringer, but Plaintiff cannot be sure of that until after it has investigated the issue with

Defendant's name and address in hand," at 24. The Court cannot simply assume that the Subscriber is the defendant who deserves to be hauled into court.

Some courts have recognized the problem with conflating a subscriber with a liable defendant and refused to grant the subpoena. *See Malibu Media, LLC v. Doe*, No. 1:14-20213-UU, 2014 U.S. Dist. LEXIS 185324 at *4-5 (S.D. Fla. Mar. 4, 2014) (Inference that account holder is infringer or is able to identify infringer is not sufficient to grant subpoena).

More recently, when granting a motion to quash, a court reasoned:

> Strike 3's request lacks the type of specificity the Second Circuit's test requires: that the request will identify a copyright infringer who can be sued. *See Sony Music*, 326 F. Supp. 2d at 566; *see also Soo Park v. Thompson*, 851 F.3d 910, 928 n.21 (9th Cir. 2017) ("[I]n circumstances 'where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear . . . that the complaint would be dismissed on other grounds.'") (citation omitted). "Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing – examining physical evidence (at least the computers, smartphones, and tablets of anyone in the owner's house, as well as any neighbor or houseguest who shared the Internet), and perhaps even interrogatories, document requests, or depositions.) *Strike 3's requested subpoena thus will not – and may never – identify a defendant who could be sued.*
> *Strike 3 Holdings, LLC v. John Doe*, No. 18-1425, 2018 WL 6027046 at *3 (D.D.C. November 16, 2018) (emphasis added).

Plaintiff failed to provide any support whatsoever for its contention that the name and address of Subscriber will provide it with anything other than exactly that – the name and address of Subscriber. Plaintiff provided no explanation as to how it could identify the actual alleged infringer other than through the lengthy discovery process. If the only way that Plaintiff can identify the actual defendant is by examining Subscriber's electronic devices, depositions, and serving and responding to discovery requests, then Subscriber is bearing the exceedingly heavy burden of litigation and its attendant costs while Plaintiff sniffs around for the actual defendant.

Subscribers who properly use their Internet service are innocent victims of Plaintiff's extortionate business model when the courts deny these motions to quash without specific evidence that Subscriber is the alleged infringer. Subscriber has a valid fear of employment reprisal if its name is publicly associated with Plaintiff. Subscriber has standing to challenge the subpoena because it has a personal interest in its name, address, and employment, at least until Plaintiff has met *its* burden of identifying the actual party in interest, the defendant. It is an undue burden upon Subscriber to be used as a disposable pawn in Plaintiff's litigation scheme.

II     THE LAW ALLOWS A PLAINTIFF TO ENGAGE IN DISCOVERY WITH A JOHN DOE DEFENDANT UNTIL PLAINTIFF HAS EVIDENCE OF PERSONAL INVOLVEMENT OF THE NAMED DEFENDANT

Plaintiff complained in its Opposition that Subscriber did not support its proposition that a summons may be issued to an anonymous person. Ptf. Opp. Br. at 22. The case law simply requires that Plaintiff provide evidence that the John or Jane Doe was directly involved in the alleged infringing acts before it will issue a summons. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Cordial v. Atlantic City*, No. 1:11-01457, 2014 WL 1095584 at *3 (D.N.J. March 19, 2014); *Kaplan v. Doe*, No. 14-1099(CCC), 2015 WL 1472641 at *3 (D.N.J. March 31, 2015) ("[F]ictitious defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed,' *Hinds v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998)"). "Where fictitious defendants are named, courts have directed plaintiffs to include specific allegations that relate to the identification of the defendants . . . ." *Id.* Once Plaintiff can allege the *personal* involvement of Subscriber in the alleged infringement, the Court will issue the summons. *Reed v. Straniero*, No. 06-3496, 2006 WL 2331107 at *4 (D.N.J. August 10, 2006) ("[W]ithout allegation of personal involvement by the identified Defendants, this Court has no reason to direct service upon defendants that do not appear to be liable."). If Plaintiff discovers

4

evidence that links Subscriber to the infringement, Subscriber prays that the Court will grant its forthcoming unopposed Motion to Proceed Anonymously; the summons would then issue accordingly.

This Motion should be granted to preserve Subscriber's personal privacy right in its name and allow Plaintiff limited discovery to try to discover the identity of the person who allegedly committed the infringement.

III      PLAINTIFF CANNOT BE TRUSTED WITH ITS ASSURANCES OF CONFIDENTIALITY BECAUSE IT HAS UNCLEAN HANDS

A.      <u>Plaintiff Has Unclean Hands</u>

Plaintiff's unclean hands warn against allowing it to know Subscriber's name and address. Plaintiff is a professional litigant. "According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases just like this one in courts across the country – forty in this district alone – closely following the copyright trolls who together consumed 58% of the federal copyright docket in 2015." *Strike 3 Holdings, LLC v. Doe*, No. 18-1425, 2018 WL 6027046 at *1 (D.D.C. November 16, 2018). Plaintiff should know, therefore, that in the Third Circuit a plaintiff may sue only on copyright registrations, not applications. *Brownstein v. Lindsay*, 742 F.3d 55, 67 (3d Cir. 2014) ("[A] copyright must not be confused with the act of registering that right. Registration serves primarily to create a record of the creation of the work and it also allows the author to bring civil claims under the Copyright Act. 17 U.S.C. § 411(a)"); *Dawes-Lloyd v. Publish America, LLLP*, 441 Fed. Appx. 956, 957 2011 WL 3555427 at *1 (3d Cir. 2011) (per curiam) ("An action for infringement of a copyright may not be brought until the copyright is registered"); *Browne v. Zaslow*, 103 F. Supp. 3d 666, 672 (E.D. Pa. 2015) (endorsing the registration approach).

Yet, Plaintiff did exactly that – of the thirty-six works in Exhibit A of the Complaint, nineteen are copyright applications, not registrations. ECF No. 1-1. According to the U.S.

5

Copyright Office, the average pendency of an application is six months and can take as long as ten months. Lippincott Decl., para. 3. Therefore many of Plaintiff's applications likely would not even be registered by the time the parties settle, according to the average time of four months in which Plaintiff normally settles cases. *See* Def. Mot. Quash, Br. at 7. Nevertheless, Plaintiff then boldly made a settlement demand based on the unregistered as well as registered works. Lippincott Decl., para. 2. Plaintiff also incorporates those unregistered works into its claim that one million dollars are at stake. Ptf. Opp. Br. at 16.

"To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff . . . . [s]uch action must be 'directly related to the matter in issue' . . . . 'the primary principle in guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, *i.e.* have a relationship, to the matters before the court for resolution.'" *Malibu Media, LLC v. Lee*, No. 12-03900, 2013 WL 2252650 at *8 (D.N.J. 2013). Plaintiff's bad faith claims and frivolous demand based on the unregistered works go directly to the heart of this litigation. Plaintiff has unclean hands.

      B.      <u>Plaintiff Cannot Be Trusted With Its Assurances of Confidentiality</u>

Plaintiff's blatant disregard of the law in its greedy grab for unjustified settlement payments cautions Subscriber from trusting that Plaintiff will honor its claim that because of "the delicate nature of these suits, [it] has put in place protocols, including inviting this Court to implement a protective order." Ptf. Opp. Br. at 4. Putting protocols in place is one thing – adhering to them is another. Subscriber has no faith that Plaintiff will not disclose or threaten disclosure of its name if Subscriber continues to disrupt Plaintiff's low-cost assembly-line litigation business model. Subscriber's Motion should be granted and Subscriber's name should remain safely tucked away.

IV      SUBSCRIBER HAS A RIGHT TO MAKE COLLATERAL ATTACKS ON THE SUBPOENA THAT LEVIES AN UNDUE BURDEN ON SUBSCRIBER.

Plaintiff files thousands of *ex parte* motions for expedited discovery to serve a subpoena on an ISP. The courts analyze the motions for good cause using the factors from *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Circ. 2010), and have to assume that the facts are true. Plaintiff's Opposition Memorandum of Law makes it clear that perhaps someone needs to shine a bright light on those facts. For example, it defends MaxMind's technology using an outdated report with vague findings. Allegedly the seven-year-old report claimed that MaxMind's geolocation technology was the *most* reliable compared to that of other companies, which has nothing to do with its actual accuracy. Ptf. Opp. Br. at 8, ECF No. 12. It is just less bad than the others. Whether Plaintiff's claims arise to the level of *prima facie* evidence of infringement is simply untested.

V      PLAINTIFF'S SUBPOENA DOES NOT SEEK RELEVANT INFORMATION

Rule 26 permits a court "for good cause" to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). Discovery must be relevant and proportional to the needs of the case. The factors to determine relevancy are:

> (1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.
> Fed. R. Civ. P. 26(b)(1)

Subscriber applies the facts to each factor. (1) The public interest is served by upholding copyright protections, but not in endorsing abusive business models whereby Strike 3,

> [a]rmed with hundreds of cut-and-pasted complaints and boilerplate discovery motions . . . floods this courthouse (and others across the country) with lawsuits smacking of extortion. It treats this Court not as a citadel of justice, but as an ATM. Its feigned desire for legal process masks what it really seeks: for the Court to oversee a high-tech shakedown. This Court declines.

7

> *Strike 3 Holdings, LLC v. Doe*, 2018 WL 6027046 at *4 (D.D.C. November 16, 2018)

(2) The amount in controversy is based on Plaintiff's improper inclusion of 19 unregistered works. (3) The ISP does not have access to the identity of the actual infringer, if there is one, as explained above. (4) Plaintiff has no basis to evaluate Subscriber's resources. Proceeding through litigation, given Plaintiff's assembly-line approach to litigation, its costs are minimal compared to Subscriber's. (5) The discovery does not resolve any issue. It merely provides the name of the Subscriber. (6) The burden and expense of engaging in discovery is significant for Subscriber. The Court should forbid the discovery that Plaintiff seeks because the name of the Subscriber is not proportional to the needs of the case, which is the identification of defendant.

VI  PLAINTIFF DELIBERATELY AVOIDS USING INEXPENSIVE COPYRIGHT ENFORCEMENT POLICIES SO IT CAN EXTORT SUBSCRIBERS WITH THE THREAT OF HUGE STATUTORY DAMAGES

Plaintiff creates the problems of which it complains, namely, it allows the infringement to continue until exorbitant statutory damages have accrued. "Defendant's IP address infringed multiple works over a long period of time." Ptf. Opp. Br. at 13. Plaintiff claims that lawsuits such as this one "have become an option of last resort," even though it sends take-down notices to websites, not ISPs. *Id*. at 3. Plaintiff also cites courts' conclusions that Plaintiff has no other recourse. *Id*. at 24. However, Plaintiff could inexpensively submit 17 U.S.C. § 512 DMCA notices to the ISP as soon as it detects infringement. Lawrence F. Rozsnyai, *Easy Come, Easy Go: Copyright Infringement and the DMCA's Notice and Takedown Provision in Light of Rossi v. MPAA*, 2 Shidler J. L. Com. & Tech. 15, Spring 2006, at *4. Reasonable infringers will stop and subscribe to the content that they prefer. Willful infringers will receive numerous DMCA notices from the ISP. A subscriber who repeatedly ignores those notices, or who fails to alert others whom it discovers are infringing, is fair game for Plaintiff. Plaintiff's claim that only this

8

instant litigation model deters infringement rings hollow, since its settlement agreements are confidential, and defendants are unlikely to publicly "spread the word."

CONCLUSION

For the foregoing reasons, Subscriber respectfully requests that the Court enter an Order granting Subscriber's Motion to Quash the Subpoena.

Dated: November 26, 2018

Respectfully submitted,

s/ Flann Lippincott
Lippincott IP LLC
475 Wall Street
Princeton, New Jersey 08540
flann@lippincottip.com
Tel: (908) 237-0400
Fax: (909) 237-0401
*Attorneys for Defendant
John Doe*